**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

**CASE NO. 6:15-MN-02613-BHH**

IN RE: TD BANK, N.A. DEBIT CARD
OVERDRAFT FEE LITIGATION

MDL No. 2613

*King v. TD Bank, N.A.*
D.S.C. Case No. 6:13-cv-02264-BHH

*Padilla v. TD Bank, N.A.*
E.D. Pa. Case No. 2:14-cv-01276-JFL
D.S.C. Case No. 6:15-cv-01563-BHH

*Hurel v. TD Bank, N.A.*
D.N.J. Case No. 1:14-cv-07621-JEI
D.S.C. Case No. 6:15-cv-01537-BHH

*Koshgarian v. TD Bank, N.A.*
S.D.N.Y. Case No. 1:14-cv-10250-PAE
D.S.C. Case No. 6:15-cv-01534-BHH

*Goodall v. TD Bank, N.A.*
M.D. Fla. Case No. 8:15-cv-00023-CEH
D.S.C. Case No. 6:15-cv-01538-BHH

*Klein v. TD Bank, N.A.*
D.N.J. Case No. 1:15-cv-00179-JBS
D.S.C. Case No. 6:15-cv-01536-BHH

*Ucciferri v. TD Bank, N.A.*
D.N.J. Case No. 1:15-cv-00424-JEI
D.S.C. Case No. 6:15-cv-01535-BHH

*Austin v. TD Bank, N.A.*
D. Conn. Case No. 3:15-cv-00088-VLB
D.S.C. Case No. 6:15-cv-01559-BHH

*Robinson v. TD Bank, N.A.*
S.D. Fla. Case No. 15-cv-60469
D.S.C. Case No. 6:15-cv-01937-BHH

**RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT BY PLAINTIFFS
GOODALL, HUREL, KOSHGARIAN, UCCIFERRI, KLEIN, AND ROBINSON**

Plaintiffs James King, Jan Kasmir, Shawn Balensiefen, Michael Goheen, Keith Irwin, JoAnne McLain, Michael McLain, Sheila Padilla, Emilio Padilla, and Caroline Austin, and the law firms Webb, Klase & Lemond, LLC ("WK&L"), Golomb & Honik, P.C. ("G&H"), Tycko & Zavareei LLP ("T&Z"), and the Hopkins Law Firm, LLC ("Hopkins"), oppose the Motion for Appointment of Interim Lead Counsel, Interim Class Counsel, and Liaison Counsel (MDL Dkt. No. 16) by Plaintiffs in the Goodall, Hurel, Koshgarian, Ucciferri, Klein, and Robinson cases.

The motion should be denied because it attempts to create a bloated and unmanageable leadership structure with no corresponding benefit to the putative class.

**I.     INTRODUCTION**

The Court is faced with competing motions to appoint: Plaintiffs in King, Padilla, and Austin seek the appointment of WK&L as interim lead counsel, the appointment of WK&L, G&H, and T&Z to a Plaintiffs' Executive Committee, and the appointment of Hopkins as liaison counsel.  See Dkt. No. 9.  These Plaintiffs seek a lean, efficient management structure, which will draw upon the manpower and resources of all firms in the litigation – including those who now seek leadership in the case.  Notably, the Plaintiffs in Goodall, Hurel, Koshgarian, Ucciferri, Klein, and Robinson do not complain about the qualifications or effectiveness of any of the three firms initially proposed for leadership.  They simply want to incorporate those three firms into a much larger leadership structure, and seek the appointment of *two* lead counsel, plus *five* firms as executive committee members, and *two* liaison counsel.[1]

But MDL litigation is not a jobs program for lawyers.  The movants make no coherent argument as to why these consolidated cases need the massive leadership structure they propose – other than to wrest for themselves a lead role in litigation they joined, on a "copycat" basis, long after it commenced.  While that may serve the interests of certain counsel, it does not serve the interests of the putative class.

Applying the relevant factors under Rule 23(g), it is clear that WK&L, G&H, and T&Z are best qualified to represent the interests of the putative class.  They have done far more work

---

[1] The proposal is as follows:  McCune Wright, LLP ("McCune") as co-lead counsel with WK&L, the appointment of Kohn, Swift & Graft, P.C. ("KS&G"), Carey Danis & Lowe ("CD&L"), and Hargrove, Pierson & Brown, P.A. ("HP&B") along with G&H and T&Z to the Plaintiffs' Executive Committee, and the appointment of Mark Tanenbaum of Mark C. Tanenbaum, PA and Blair Hahn of Richardson, Patrick, Westbrook & Brickman, LLC as co-liaison counsel.

2

to date on the cases against TD Bank than the other firms which have just joined the proceedings. The complaints in King and Padilla reflect significant independent and original work by WK&L and G&H identifying and investigating the claims. By contrast, the contribution of the firms in the new cases is limited to filing complaints that are virtual carbon copies of the King and Padilla complaints. In addition, WK&L, G&H, and T&Z have extensive knowledge and experience in litigation dealing with the assessment of overdraft fees. KS&G, CD&L, and HP&B have no such experience.[2] It is counterproductive to have "too many cooks in the kitchen"; it can be downright harmful when those cooks also are inexperienced.

There is also another important consideration for the Court. There is little dispute that the Goodall, Hurel, Koshgarian, Ucciferri, Klein, and Robinson actions are "copycat" complaints filed well after this litigation began. The lawyers who filed those actions now seek leadership roles in litigation that they had no interest in until very recently. But wasteful and duplicative litigation is rightly disfavored by our court system. Appointing the new firms to leadership would send the wrong message to other attorneys considering filing "copycat" cases. The "copycat" cases have already resulted in hundreds of hours of unproductive attorney time – for example, in the unsuccessful fight to take the case to New Jersey – without a corresponding benefit to the class. That inefficiency will only grow with the unwieldy leadership structure that those firms now suggest, as it would create further hundreds of hours on unproductive attorney time in managing the bulky leadership structure.

---

[2] While McCune has experience, as explained below, the firm's history in overdraft litigation is checkered at best.

## II.     ARGUMENT

### A.     WK&L, G&H, and T&Z Are Better Suited Than the Movants to Represent the Interests of the Class.

Under Rule 23, courts must consider four factors in appointing class counsel: (1) the work counsel has done identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  See Fed. R. Civ. P. 23(g)(1)(A)(i-iv); e.g., Johnson v. District of Columbia, 248 F.R.D. 46, 58 (D.D.C. 2008).  Where there is more than one applicant for class counsel, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(3).  All factors weigh in favor of WK&L, G&H, and T&Z here.  Those firms are "best able to represent the interests of the class," based both on the Rule 23(g) factors and based on the radically more efficient leadership structure they propose.

#### 1.     WK&L, G&H, and T&Z Have Done More Work Identifying and Investigating the Potential Claims.

To date, the only work performed by McCune, KS&G, CD&L, and HP&B (collectively, the "movants") has been the filing of their respective complaints and participating in the JPML process that resulted in the creation of this MDL.  In contrast, the firms that have spent that most time on this case are WK&L and G&H.  Indeed, WK&L has already been litigating – and leading – this case for 21 months.

As outlined previously, WK&L's leadership role in identifying and investigating the potential claims against TD Bank arising from its assessment of unfair and unconscionable overdraft fees is unmatched.  WK&L still serves on the Plaintiffs' Executive Committee in MDL 2036, in which TD Bank entered into a $62 million settlement, which funds have already been

4

paid to customers. Since 2012, WK&L has been investigating additional claims against TD Bank. In August of 2013, King was filed. Extensive work has been ongoing over the ensuing 21 months. See Webb Decl. ¶¶ 4-14 (Dkt. No. 9-3). For example, the planning process was completed and confidentiality and ESI orders negotiated. Id. at ¶ 10. Extensive written discovery was propounded and responded to by all parties. Id. Over 1,200,000 pages of documents have been disclosed by TD Bank, and hundreds of hours have already been spent by WK&L reviewing and coding these documents. Id. at ¶¶ 13-14.

G&H is also on Plaintiffs' Executive Committee in MDL 2036 and therefore has six years of experience pursuing overdraft-related claims, including those that led to the prior TD Bank settlement. G&H has been pursuing the Padilla case against TD Bank since February 2014, including briefing and arguing the motion to dismiss. See Webb Decl. ¶ 23. G&H has worked in loose coordination with WK&L and TD Bank's counsel on discovery issues, such as ESI search terms, so that no discovery would need to be duplicated. After TD Bank began its rolling production of documents, WK&L and G&H coordinated on the technological aspects of the document coding process.

While T&Z filed the Austin case in January of this year, it spent substantial time litigating against TD Bank's overdraft practices in MDL 2036. See Webb Decl. ¶ 29. T&Z's Austin complaint offers additional theories of recovery, including contract claims that had not been pleaded in any prior complaints. As a further indication of its effort in "identifying and investigating potential claims," T&Z is also pursuing very similar claims to those pursued here in other litigation.

On the other hand, the only time spent by the movants on *this* case has been unproductive, namely the filing of "copycat" complaints, an effort before the JPML to take the

5

case from this Court, and now a move to obtain leadership positions for themselves by proposing a huge leadership structure. This is not the kind of work that is valued under Rule 23(g). Thus, the first factor strongly supports appointment of WK&L, G&H, and T&Z.

> **2. Proposed Class Counsel WK&L, G&H, and T&Z Readily Satisfy the Second and Third Factors, Whereas KS&G, CD&L, and HP&B Do Not, and McCune's Experience Cautions Against Appointment.**

As discussed in more detail in their motion for appointment (MDL Dkt. No. 9), WK&L, G&H, and T&Z have long and successful track records of leading complex class litigation involving overdraft fees – on their own, and as co-lead counsel with one another. WK&L and G&H have both served on the Plaintiffs' Executive Committee in MDL 2036, In re Checking Account Overdraft Litigation since its inception. See Webb Decl. ¶¶ 4, 23. MDL 2036 has resulted in over $1 billion in settlements with many of the nation's largest financial institutions. Id. at ¶ 15. Outside of MDL 2036, WK&L was sole counsel for the plaintiffs in Lunsford, which resulted in a $7.75 million settlement with Woodforest Bank, and served as co-lead counsel in Jenkins, which resulted in a $4.0 million settlement with Trustmark National Bank. Id. at ¶ 19.

G&H led cases against J.P. Morgan Chase and Capital One in MDL 2036. Id. at ¶¶ 25-26; Dkt. No. 4160 in Case No. 1:09-cv-02036-JLK (S.D. Fla.) (District Court approving of $31 million class settlement in Capital One case on May 13, 2015). G&H has also pursued other state and federal overdraft fee class actions outside of MDL 2036, including: Johnson v. Community Bank, N.A., Case No. 12-cv-01405 (M.D. Pa.); Simpson v. Citizens Bank, Case No. 12-cv-10267 (E.D. Mich.); Walker v. Bank of the Ozarks, Inc., Case No. CV-11-777 (Lonoke Cir. Ct. Ark.); and Hind v. RCB Bank, Case No. CJ 2015-1457 (Okla. Dist. Ct.). G&H and WK&L have jointly pursued a case with claims similar to those here since 2011. See Collier v. National Penn Bank, No. 11CV1200163 (Ct. of Common Pleas, Philadelphia County, Pa.).

6

While not on the PEC in MDL 2036, T&Z contributed to the case against TD Bank in the MDL and has pursued numerous overdraft-related cases outside the MDL, including Hawkins v. First Tennessee Bank, N.A., No. CT-004085-11 (Cir. Ct. of Shelby County, Tenn.), and Jacobs v. FirstMerit Corp., No. 11CV000090 (Ct. of Common Pleas, Lake County, Ohio).[3] In those cases, T&Z has defeated motions to dismiss, motions for summary judgment, and won class certification in Jacobs.

No one, including movants, questions these qualifications or suggests that these firms should not be named to leadership. Rather, movants simply support a larger leadership team that makes room for them. But counsel need not be on a leadership team in order to have a meaningful role in litigation. Indeed, WK&L, G&H, and T&Z are committed to soliciting the contributions of **all** attorneys in this litigation, including movants. Further, a three-firm Plaintiffs' Executive Committee ("PEC") is sufficient for this case, as indicated by the size of leadership structures in similar overdraft fee cases. For example, in MDL 2036 – which included claims against *dozens* of banks, including nearly all of the largest banks in the country – only five firms were named to the committee. See Dkt. No. 52 in Case No. 1:09-cv-02036-JLK (S.D. Fla.). Another firm was later added. See Dkt. No. 77 in Case No. 1:09-cv-02036-JLK (S.D. Fla.). Dozens of other firms whose cases were transferred into the MDL were not included in the leadership structure. But many of those firms still played a meaningful role in the litigation. The

---

[3] T&Z's overdraft cases also include: Mathena v. Webster Bank, Case No. 3:10-cv-01448 (D. Conn.); Allen v. UMB Bank, N.A., Case No. 1016 Civ. 34791 (Cir. Ct. Jackson County, Mo.); Casto v. City National Bank, N.A., 10 Civ. 01089 (Cir. Ct. Kanawha County, W. Va.); Eaton v. Bank of Okla., N.A., and BOK Fin. Corp., Case No. CJ-2010-5209 (Dist. Ct. for Tulsa County, Okla.); Taulva, v. Bank of Hawaii, Case No. 11-1-0337-02 (Cir. Ct. of 1st Cir., Haw.); Duval v. Citizens Fin. Group, Inc., Case No. 1:10-cv-21080 (S.D. Fla.); Mascaro v. TD Bank, Case No. 10-cv-21117 (S.D. Fla.); Molina v. Intrust Bank, N.A., Case No. 10-cv-3686 (18th Judicial Dist., Dist. Ct. Sedgwick County, Kan.); Schulte v. Fifth Third Bank, Case No. 1:09-cv-06655 (N.D. Ill.); and Trombley v. National City Bank, Case No. 1:10-cv-00232-JDB (D.D.C.).

success of MDL 2036 suggests three firms are plenty for the PEC in this case against *one* bank.

While KS&G, CD&L, and HP&B certainly have significant class action experience, the materials filed in support of their appointment to leadership are devoid of *any* mention of experience in cases regarding overdraft fees, which require a facility with complex issues of banking law and consumer protection law, along with an understanding of complex data and damages issues. But three of the firms proposed for the expanded PEC had *zero* experience in overdraft fee litigation prior to filing the cases in this consolidated litigation. The only experience that KS&G has pursuing overdraft fee claims is the fact that it filed Ucciferri. The only experience in this area of law that CD&L has according to its moving papers is that it filed the Hurel case. And the only experience in overdraft fee litigation that HP&B has according to its motion is that it filed the Robinson case, which focuses on Regulation E violations, a claim that is pled in both King and Padilla. It should be noted as well that HP&B seeks a leadership position in this MDL while actively seeking to exclude another case it has filed against TD Bank related to usury for fees on extended overdraft balances. See Motion to Vacate (JPML Dkt. No. 60 in MDL 2613).[4] Because KS&G, CD&L, and HP&B have no experience litigating overdraft fee cases, Rule 23(g) counsels against appointing them to a leadership position in this MDL.

Unlike KS&G, CD&L, and HP&B, McCune does have experience in overdraft fee litigation. However, McCune's experience demonstrates that Richard McCune should not be appointed as co-lead counsel.[5] In support of the argument that he should be appointed co-lead counsel, the McCune firm touts its participation in Gutierrez v. Wells Fargo, N.A., Case No.

---

[4] Any attempt by the movants to reply based upon HP&B's "unique claim for usury for fees on extended overdraft balances" as evidence of their investigatory efforts is undermined by the fact that HP&B is actively attempting to exclude this claim from this MDL.

[5] While WK&L, G&H, and T&Z do not believe that two leads are warranted in this case, to the extent the Court finds otherwise, G&H would be a more appropriate co-lead counsel based on its work in Padilla, the second oldest case in this MDL, and its great success in overdraft litigation.

8

3:07-cv-5923 (N.D. Cal.). But McCune's contributions to the success of <u>Gutierrez</u> have been repeatedly called into question by the District Court. In May of 2009, McCune attempted to settle <u>Gutierrez</u> with Wells Fargo for a total of $16 million. <u>See</u> Transcript of May 13, 2009 Hearing (Exhibit A hereto). District Judge Alsup rejected this settlement out of hand, stating:

> 16 million is very low for a case where your expert said the damages were 200 million. So right there I would be very inclined not to approve this. Mr. McCune, I think you need to get a lawyer in this case to help you who has tried cases in this district on a class action basis.

<u>Id.</u> at 3:9-15. Judge Alsup continued, "I think you better get somebody like Reed Kathrein or Elizabeth Cabraser. If this case is worth $200 million there's no way the class ought to be selling it out short." <u>Id.</u> at 3:19-22. Judge Alsup then extended the tentative trial date in <u>Gutierrez</u> to allow McCune time to bring in additional counsel (which McCune did) and have the plaintiffs' expert conduct a 41-month damages study because the one-month study that was previously done was unacceptable to the court. <u>Id.</u> at 11:12 – 16:3.

Following the trial in <u>Gutierrez</u>, where Richard Heimann of the firm Lieff Cabraser was lead trial counsel, the plaintiffs sought an award of legal fees based on their success and Wells Fargo sought reimbursement of incremental fees and expenses incurred unnecessarily because of the plaintiffs' original improper damages study. In his order on the motions, Judge Alsup noted:

> It must be said, however, that two different law firms represented the class as counsel of record, and the quality of their services was not equivalent. The law firm McCune & Wright, LLP represented the class throughout the duration of the action, and the law firm Lieff, Cabraser, Heimann & Bernstein, LLP was brought in as additional class counsel in June 2009. This association of counsel took place shortly after the trial date was continued to allow plaintiffs a second chance to complete a proper damages study after summary judgment proceedings exposed the inadequacy of plaintiffs' expert's first study. Lawyers from the Lieff, Cabraser firm did an excellent job in rescuing expert and trial preparation and in trying the case. The work done by Richard McCune and other lawyers from the McCune law firm leading up to the expert period was ***unimpressive***.

<u>See</u> Jan. 20, 2011 Order, p. 2 (emphasis added) (Exhibit B hereto). Judge Alsup reserved ruling

9

on class counsel's request for fees pending Wells Fargo's appeal, but granted in part Wells Fargo's request for fees and expenses, ***ordering McCune (and not the plaintiffs or the Lieff Cabraser firm) to pay Wells Fargo $90,000*** to reimburse the bank for fees and expenses it incurred unnecessarily as a result of the original inadequate damages study. Id. at 6.

Thus, while McCune has experience in overdraft fee litigation through participation in Gutierrez, according to Judge Alsup, the contributions were unimpressive and McCune had to be "rescued" by another firm which led the efforts at trial and in subsequent appeals. See Gutierrez v. Wells Fargo Bank, N.A., 704 F.3d 712 (9th Cir. 2012); Gutierrez v. Wells Fargo Bank, N.A., 944 F. Supp. 2d 819 (N.D. Cal. 2013), aff'd in part, vacated in part, remanded sub nom. 589 Fed. Appx. 824 (9th Cir. 2014). McCune's experience in Gutierrez raises red flags.[6]

The McCune firm also touts its experience in MDL 2036. It is true that McCune was assigned "certain limited responsibilities by Co-Lead Counsel" in MDL 2036 as a participating firm. See Jan. 18, 2013 Order, p. 1, Case No. 1:09-md-02036-JLK (S.D. Fla.) (Exhibit C hereto). But McCune's participation in MDL 2036 was cut short after the firm threatened to "file a complaint containing privileged and confidential information" against his co-counsel in California state court. Id. at 2. McCune demanded $19,625,000 from "former, pending, and future MDL settlements." Id. Senior Judge King, who presides over MDL 2036, found that

---

[6] Around the time McCune attempted to settle Gutierrez for less than 8% of the eventual recovery, it also settled overdraft related claims against Bank of America for $35 million. The Closson case had been filed only for a California class and was based on a California statute but, in order to procure a larger settlement, the class was expanded to include all customers nationwide. See Dkt. No. 2150 in Case No. 1:09-cv-02036-JLK (S.D. Fla.), pp. 8-9 (discussing impact of Closson on Bank of America settlement in MDL). Counsel for the plaintiffs in MDL 2036 were forced to object to the settlement in an attempt to preserve their classes' claims in the face of the expansive nationwide release negotiated by McCune. Id. at 9. A major stumbling block in the MDL was overcoming the too-broad release from McCune's Closson settlement. Id. at 22-23. Fortunately, during the pendency of the objection and appeal, MDL counsel – including WK&L and G&H – were able to procure a $410 million settlement with Bank of America. See generally Dkt. No. 2150. Once again, McCune's involvement raises questions.

McCune's threatened filing "discloses privileged and confidential information relating to this MDL" and was "in direct contravention of this Court's carefully considered case management orders organizing both counsel and this litigation, and this Court's order retaining jurisdiction over the settlements and final judgments approved and entered to date." Id. Judge King issued a temporary restraining order against McCune "taking any action relating to the allocation of fees in MDL 2036, or the action of Lead Counsel in connection therewith, in any court or forum other than the United States District Court for the Southern District of Florida." Id. at 12. McCune then began a fee dispute before the federal court. **Over two years later**, McCune's fee fight against its fellow counsel – including potentially WK&L and G&H – continues. E.g., Dkt. Nos. 4157, 4125, 4120, 4118, 4024, 4020 (filings under seal; most recent filings from May of 2015). Undoubtedly hundreds of hours have been spent on this dispute, with no benefit to the classes of bank customers. Therefore, McCune's experience in MDL 2036 also suggests caution.[7]

In sum, seven firms are too many to lead this case – which is already well underway – against one bank. KS&G, CD&L, and HP&B do not have experience handling overdraft claims

---

[7] McCune's experience in MDL 2424, In re Hyundai & Kia Fuel Economy Litigation, also militates against appointment as co-lead counsel. At the conclusion of MDL 2424, counsel submitted applications for fee awards. McCune requested $6 million. See Opp. to Espinosa Plaintiffs' Motion for Fees, p. 3 (Dkt. No. 398 in Case No. 2:13-ML-02424-GW (C.D. Cal.)) (Exhibit D hereto). The request was challenged on multiple grounds:

> not only did Espinosa [the McCune case] focus on a different substantive theory, its scope was also too narrow to claim responsibility for inspiring the settlement or to justify the award counsel seeks. The MDL settlement involves two defendants, HMA and KMA. Espinosa asserted claims only against HMA. Further, whereas the MDL settlement covers 76 class vehicles, Espinosa targeted only four models.

Id. McCune requested a higher fee multiplier than all other firms, including lead counsel. Id. at 9. At hearing, Judge Wu called the request "absurd" and reduced McCune's fee by over $3 million. See D. Siegal, Judge Halves 'Absurd' $6M McCuneWright Fee Bid in Kia MDL (May 7, 2015) (available at: www.law360.com/articles/653230/judge-halves-absurd-6m-mccunewright-fee-bid-in-kia-mdl). As of the date of this filing, Judge Wu's oral order has not been reduced to writing.

11

or knowledge of the applicable law to warrant appointment to leadership positions. And the experience that McCune brings to the table is checkered. The second and third Rule 23(g) factors weigh heavily in favor of appointing only WK&L, G&H, and T&Z as Interim Class Counsel.

### 3. WK&L, G&H, and T&Z Are Better Able to Deploy Their Resources in a Cost-Effective Way for the Class.

Both proposed leadership groups have adequate resources to litigate this case. Accordingly, the relevant question is which group is best able to marshal their respective resources efficiently and cost-effectively on behalf of the putative class. See Manual for Complex Litigation (Fourth) § 10.22 (2011) (noting that the court should be confident that any counsel appointed will fulfill its obligation "to act fairly, efficiently, and economically in the interest of all parties and parties' counsel"). The knowledge and existing work product possessed by WK&L, G&H, and T&Z, as well as the fact that proposed lead counsel WK&L is located the closest to this Court, means that WK&L, G&H, and T&Z can litigate this case more cost-effectively. "Too many cooks in the kitchen" – especially inexperienced ones – will just add inefficiency to the case.

While the movant firms certainly include enough attorneys to litigate the case, all are located a long distance from the Court. Moreover, appointing three more firms to the leadership structure that do not have any prior experience in overdraft fee litigation does not promote an efficient and cost-effective use of resources on behalf of the putative classes. Likewise, appointing two firms co-liaison counsel in this case does not promote efficiency, but is a further indication that the structure proposed by the movants will be bloated. The small, focused leadership team proposed by WK&L, G&H, and T&Z will not bog down this case with unnecessary bureaucracy, but rather will allow firms with extensive experience in overdraft fee

litigation to move this case forward in an efficient manner while relying upon the resources of all interested and capable firms as they have committed to doing.

For these reasons, the fourth factor supports appointment of WK&L, G&H, and T&Z.

### B. Support of Other Plaintiffs' Counsel Is Not a Factor the Court Should Consider.

In support of the motion for appointment of McCune as co-lead counsel and KS&G, CD&L, and HP&B as members of the committee, the movants suggest that one of the most important reasons these firms should be appointed is because they have "the broad support of a majority of the other firms in this MDL" and that six of the nine firms in this MDL support the requested appointment. As noted above, the four factors that courts are charged with evaluating in appointing lead counsel do not include popularity among co-counsel. See Fed. R. Civ. P. 23(g)(1)(A)(i-iv). Support of the majority of the other firms in an MDL is not a criterion for this Court to consider and the motion for appointment filed by movants illustrates why.

Counsel in Goodall, Hurel, Klein, Ucciferri, Koshgarian, and Robinson filed substantially similar cases against TD Bank 16 months after King was filed and 10 months after Padilla. To some extent they admit to coordinating their effort the file the "copycat" cases. See Dkt. No. 16-1, p. 20 (noting that CD&L "worked cooperatively with other firms, including Plaintiffs in the first Florida case (Goodall) and the only New York case (Koshgarian)"). An organized group of law firms must not be permitted to take over a case by filing coordinated complaints well after the litigation has begun and then jointly supporting a motion to appoint members of such a group to positions of leadership. Respectfully, the Court should discourage such a practice.

### III. CONCLUSION

The competing motions for appointment require the Court to determine which applicants are best able to represent the interests of the putative classes in this MDL. The four factors that

courts evaluate all demonstrate that Webb, Klase & Lemond, LLC should be appointed lead counsel and that the executive committee should be made up of WK&L, Golomb & Honik, and Tycko & Zavareei. These firms have the requisite experience in these types of cases, knowledge of the applicable law, and track records to successfully represent the interests of the classes. They have worked well together in the past and have obtained outstanding results.

There is no doubt that exceptional lawyers work at Kohn, Swift & Graft, Carey Danis & Lowe, and Hargrove, Pierson & Brown. However, no more than three firms are warranted for the PEC in this case and these firms do not have any experience in overdraft fee cases. While McCune Wright has experience in overdraft fee cases, the experience has not always been positive for bank customers and has been fraught with controversy.

Accordingly, Plaintiffs in <u>King</u>, <u>Padilla</u>, and <u>Austin</u> respectfully request that the Court deny the Motion for Appointment of Interim Class Counsel, Interim Lead Class Counsel, and Co-Liaison Counsel (MDL Dkt. No. 16) and grant the motion to appoint docketed at MDL Docket Number 9.

Dated: May 18, 2015        */s/ William E. Hopkins, Jr.*
William E. Hopkins, Jr. (Fed. I.D. # 6075)
**HOPKINS LAW FIRM, LLC**
12019 Ocean Highway
Pawleys Island, SC 29585
Telephone: (843) 314-4202
bill@hopkinslawfirm.com

E. Adam Webb
G. Franklin Lemond, Jr.
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, SE, Suite 480
Atlanta, GA 30339
Telephone: (770) 444-0773
Adam@WebbLLC.com
Franklin@WebbLLC.com

14

Richard M. Golomb
Ruben Honik
Kenneth J. Grunfeld
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone: (215) 985-9177
rgolomb@golombhonik.com
rhonik@golombhonik.com
kgrunfeld@golombhonik.com

Hassan A. Zavareei
Jeffrey Kaliel
**TYCKO & ZAVAREEI LLP**
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900
hzavareei@tzlegal.com
jkaliel@tzlegal.com

Michael L. Goldberg (S.C. Bar No. 80681)
**FRIED ROGERS GOLDBERG LLC**
3560 Lenox Road, N.E., Suite 1250
Atlanta, GA 30326
Telephone: (404) 591-1825
Michael@frg-law.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 18, 2015, I electronically filed this Response in Opposition and all supporting documents with the Clerk of the Court using the CM/ECF system, which will cause a true and correct copy to be served via e-mail on all ECF-registered counsel of record.

                                                   */s/ William E. Hopkins, Jr.*
                                                   William E. Hopkins, Jr. (Fed. I.D. # 6075)